IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOSEPH C. | : | |
| | : | |
| v. | : | NO. 24-CV-1273 |
| | : | |
| LELAND A. DUDEK, | : | |
| Acting Commissioner for Social Security | : | |

**O P I N I O N**

SCOTT W. REID                                                                  DATE:  April 3, 2023
UNITED STATES MAGISTRATE JUDGE

Joseph C. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  He has filed a Request for Review to which the Commissioner has responded.  As explained below, I conclude that Joseph C.'s Request for Review should be denied, and judgment entered in favor of the Defendant.

I.      *Factual and Procedural Background*

Joseph C. was born on March 8, 1971.  Record at 407.  He completed tenth grade. Record at 86, 87.  In the past, he worked as a receiver and stocker.  Record at 493.  On December 5 and 6, 2018, he filed applications for DIB and SSI, alleging disability on the basis of generalized anxiety disorder, fractured ribs, and "lower back, left arm problems."  Record at 407, 413, 491.  He later alleged seizures, knee pain, insomnia, and right shoulder pain.  Record at 91-4, 599-600.

Joseph C.'s applications for benefits were denied on July 23, 2019. Record at 146, 147. They were denied again on December 4, 2019, upon reconsideration. Record at 166, 167. Joseph C. then requested reconsideration *de novo* by an Administrative Law Judge ("ALJ"). Record at 186.

At the first hearing, on November 18, 2020, Joseph C. appeared without representation. Record at 41-2. After discussion, it was decided that the ALJ would postpone the hearing to give Joseph C. an opportunity to seek counsel. Record at 47. The ALJ informed him that she would not grant another postponement on this basis. Record at 43-4. On July 7, 2021, Joseph C. again appeared without representation. Record at 52-3. The ALJ proceeded to take his testimony. Before the ALJ issued a decision, however, Joseph C. obtained counsel, and the ALJ scheduled a third hearing for March 1, 2023, at which she took testimony in the presence of his representative. Record at 75.

On June 5, 2023, the ALJ issued a written decision denying benefits. Record at 20. The Appeals Council denied Joseph C.'s request for reconsideration on February 21, 2014, permitting the ALJ's decision to serve as the final decision of the Commissioner for Social Security. Record at 1. Joseph C. then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied

the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.    *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ found that Joseph C. suffered from the following medically determinable impairments: colitis, hyponatremia, hypokalemia, prolonged QT (a heart irregularity), thrombocytosis, bladder wall thickening, insomnia, eczema, and alcohol use disorder with withdrawal seizures.  Record at 23.  She wrote that the evidence did not permit her to find that his alleged knee, back, and elbow pain were related to any medically determinable impairment.  *Id*.

The ALJ went on to find that the medically determinable impairments from which she found Joseph C. to suffer were not shown to significantly limit his ability to perform basic work-related activities for twelve consecutive months.  *Id*.  She could not, therefore, find that they were severe impairments, or a severe combination of impairments.  *Id*., *citing* 20 C.F.R. §404.1521 *and* §416.921.  After a discussion of the evidence underlying her findings, the ALJ decided at the second stage of the sequential evaluation that Joseph C. was not disabled.  Record at 30.

In his Request for Review, Joseph C. argues that the ALJ's decision was erroneous.  He maintains that her finding that he had no severe impairment was contradicted by the medical opinions of the agency reviewing physician, L. Antone Raymundo, M.D., and the consulting independent physicians, Saeed Bazel, M.D., and Anne Greenberg, M.D.  He maintains that it was also contradicted by his own testimony, and by the underlying medical treatment records.

IV.   *Discussion*

    A.   *Joseph C.'s Orthopedic Complaints*

Throughout the administrative proceedings, Joseph C. heavily emphasized his orthopedic complaints. At his second administrative hearing, for example, when the ALJ asked him "what are the conditions that are affecting you?", he responded by referring to his seizures, but also said: "it starts with my back," and added: "as far as my arms go, I can't lift them up above my head without pain in my shoulders." Record at 58-9. Under questioning from his representative at the third hearing, Joseph C. mentioned mental confusion, eczema, colitis, and insomnia, but also spent considerable time testifying about his back pain:

> [W]hat used to be simple things like picking up a basket full of laundry which used to be nothing, now it's, you know, I'll get this – it's just a shooting pain that's kind of hard to describe. And my father gets his paper delivered every day, so I got out on the, you know, front of my house to pick it up, and just the other day I had a real problem; I bent over to pick it up, and I actually had to sit down on my steps because of the – like, the pain was just so bad I had to wait a couple minutes before I could get back up the steps to bring the paper back into the house.

Record at 91.

Joseph C. also testified that his knees "started flaring up" a year earlier, and that he often had to elevate and ice them two or three times per day to bring down the pain and swelling. Record at 91-2. He testified that he could stand comfortably for five minutes "at best," and walk for five minutes without a rest. Record at 91. Whereas he used to have problems with his right shoulder, it was now his left shoulder which prevented him from reaching overhead without pain. Record at 93. He could lift five pounds at the most "without feeling major discomfort." *Id*.

5

As Joseph C. argues, both agency reviewing physicians and the independent consulting physician found that he was limited by his back and shoulder complaints. Saeed Bazel, M.D., examined Joseph C. on June 11, 2019. Record at 599. He diagnosed Joseph C. with "chronic lower back pain; right shoulder pain; right-sided chest pain due to old rib fractures; left elbow pain; history of anxiety; right arm and hand weakness." Record at 603. He found that Joseph C. could sit for five hours in an eight-hour workday, but he could only stand and walk for one hour each. Record at 605. These would be work-preclusive limitations, since they do not equal eight hours.

A second consulting physician, Anne M. Greenberg, M.D., examined Joseph C. on February 15, 2023. Record at 831. She diagnosed him with "history of seizures x2; bilateral knee pain; lower back pain; left shoulder pain with diminished range of motion; possible heavy alcohol use in the past; daily nicotine use disorder." Record at 834. She found that he could stand for four hours in an eight-hour workday, but walk for only two hours. Record at 836. This would limit Joseph C. to sedentary work, which would result in a finding of disability given his age and other factors. *See* Record at 83.

Agency physician L. Antone Raymundo, M.D., reviewed Joseph C.'s medical records – which at that time would have included Dr. Bazel's report, though not Dr. Greenberg's – and concluded on July 23, 2019, that Joseph C. was capable of light work, but specified that he suffered from a severe "spine disorder." Record at 137.

The ALJ found all of these assessments to be less than persuasive. Record at 29-30. Joseph C. submits that this rejection of all contrary evidence, and failure to credit the evidence of two examining physicians, renders her conclusion that he had no severe physical impairment defective.

6

Some of Joseph C.'s complaints about the ALJ's reasoning are valid. In finding Dr. Bazel's report unpersuasive, the ALJ noted that it was based on on only a "one-time assessment." Record at 29. Yet, as Joseph C. points out, all consulting examinations are one-time assessments, and it would be of little use to order them at all if they could be rejected on that basis. Nevertheless, the ALJ's entire sentence read: "This opinion is also based on a one-time assessment of the claimant **and** is not consistent with the later-acquired evidence in the record documenting the claimant's minimal treatment for his impairments, the unremarkable objective imaging, and the physical examinations generally within normal limits." *Id*. (Bold supplied).

Thus, the ALJ's overall analysis of Dr. Bazel's findings as to Joseph C.'s limitations is more thorough than Joseph C. recognizes. Indeed, upon physical examination, Dr. Bazel found Joseph C. to have a normal gait and stance, with negative straight-leg raising test bilaterally, both seated and supine, indicating an absence of radiculopathy. Record at 601-2. Neurologically, he was normal, with full strength in his extremities, except the right arm which had 4/5 strength. Record at 602.

Similarly, in 2023, Dr. Greenberg reported that Joseph C. had a normal gait and stance, and needed no assistance to get on or off the examining table or to rise from a chair. Record at 833. His joints were stable and non-tender, and he had a negative straight-leg raising test. Record at 834. He had no muscle atrophy. *Id*.

Perhaps even more important than the normal physical examinations were the normal objective tests. Dr. Bazel noted that 2019 x-rays of Joseph C.'s lumbar spine showed "no acute fracture or subluxation." Record at 602, 614. The radiologist also reported that Joseph C.'s disc spaces and the height of his vertebral bodies were "relatively well-maintained." Record at 614.

7

An x-ray of Joseph C.'s right shoulder was also normal, with joint spaces "relatively well-maintained" and no acute fracture or dislocation identified. Record at 615. The only other x-ray, taken on October 11, 2021, after Joseph C. went to the emergency room for abdominal pain, revealed only "mild degenerative changes" in the lumbar spine. Record at 798. The record contains no MRI or other diagnostic report, despite Joseph C.'s primary care physician having referred him for a neck x-ray and EMG on July 13, 2021. Record at 820. Joseph C. was also noted on that day to have a normal range of motion, gait, and strength. *Id*.

Crucially, these normal x-rays, combined with the normal physical examinations, left the ALJ with no evidence from which she could identify a medically determinable impairment regarding Joseph C.'s back, neck, knees, or either of his shoulders. Although Drs. Bazel and Greenberg listed findings of pain in their diagnoses, as the ALJ noted, in terms of a Social Security claim, "pain is a symptom, not a diagnosis." Record at 27. Under the Social Security regulations, "Your symptoms, such as pain … will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present"). 20 C.F.R. §404.1529(b)

Thus, a claimant will never be found disabled based on symptoms, including pain, unless medical findings show that there is a medical condition that could be reasonably expected to produce those symptoms. *Green v. Schweiker*, 749 F.2d 1066, 1068-9 (3d Cir. 1984). As more recently expressed:

> [A] claimant cannot prove that he is disabled based solely on his subjective complaints of pain and other symptoms. *See Green v. Schweiker*, 749 F.2d 1066, 1069-79 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not in themselves constitute disability"). He must provide medical findings that show that he has a medically determinable impairment. *See id*.

*The Losen v. Astrue*, Civ. A. No. 7-6140, 2009 WL 2148071 at *14 (D.N.J. Jul. 16, 2009), *aff'd sub nom. Thelosen v. Commissioner of Soc. Sec.*, 384 F. App'x 86 (3d Cir. 2010).

The ALJ did not make any secret of concern that Joseph C. had not shown the existence of a medically determinable impairment. At the third hearing, she said to Joseph C.'s representative:

> [M]y real problem with this case is the lack of a medically determinable impairment that would account for the claimant's symptoms. The CEs were pretty consistent, but both of them said, you know, that the only diagnoses that are listed were essentially pain, which is not a diagnosis but rather a symptom, and I just don't have anything to hang my hat on in terms of a medically determinable impairment there. Neither one, you know, opine to say arthritis or something that would explain the symptoms.

Record at 80. After discussing the medical record for a while, the ALJ again emphasized: "But again, we've got to see if we can square up an MDI here." Record at 83. Thus, Joseph C.'s counsel was on notice that this was a weakness in the case, but was apparently not able to correct it.

Given this, the ALJ's finding at stage 2 that Joseph C. had not shown the existence of a severe impairment regarding his orthopedic claims is well-supported by the medical record, seen in the light of the relevant agency regulations. Indeed, there is no objective testing at all regarding Joseph C.'s knees or his left shoulder and arm. The ALJ was also able to rely upon the findings of Gene Whang, M.D., who reviewed Joseph C.'s medical records upon reconsideration and opined on November 26, 2019, that his physical impairments were non-severe. Record at 29, 153.

B.   *Joseph C.'s Testimony*

Joseph C. argues that the ALJ erred in finding that his seizures, colitis, and cervicalgia were not severe impairments. He testified that he lost his driver's license because of his seizures, and that his colitis caused him an urgent need to use the bathroom two to four times per day.

9

Record at 85-6, 100-101.  He did not mention a problem with his neck at the hearing, but in his Request for Review he ties it to his inability to lift his arms above his shoulders, and his "widespread pain."  Request for Review at 12.  According to Joseph C., this was enough to compel a finding that he suffered from more than minimal limitations as a result of his impairments.

The ALJ, however, did not find Joseph C.'s statements consistent with the evidence of record as a whole.  She pointed out that he had very limited medical treatment.  Record at 27.  Joseph C. sought to explain this at his hearing by reminding the ALJ that he had no health insurance until 2019, and then lost his driver's license in 2021 after he had seizures, so that he had transportation issues from then on.  Record at 56, 85, 102-5.

The ALJ was not convinced:

> While [Joseph C.] indicated he could not go to the doctor throughout the period at issues, he did present to the hospital twice, once for alcohol withdrawal seizures, and once for persistent diarrhea.  Despite the severity of his bowel complaints, insomnia, and his additional anxiety and memory complaints, the record does not reflect he followed up with any gastroenterology, neurology, or sleep medicine.  Nevertheless, he was able to attend both consultative examinations and more recently presented to dermatology for evaluation of eczema, a relatively minor complaint.

Record at 27.  At the hearing, the ALJ also elicited testimony that Joseph C. found rides to his chiropractor appointments two to three times per week in 2021-2022.  Record at 80, 103.

As to colitis, Joseph C. testified at the hearing that he treated the symptoms with Pepto-Bismol.  Record at 101.  Further, as noted above, he testified that he had not had a seizure since his hospitalization.  Record at 98.  As to Joseph C.'s neck pain, the ALJ pointed out (as discussed above) that "pain is a symptom, and not a diagnosis."  Record at 27.

Thus, substantial evidence discussed in the ALJ's opinion supported her conclusion that Joseph C.'s testimony did not compel a finding that his seizures, neck pain, or colitis were severe

10

impairments. This is true even when his testimony is considered together with the medical records, as discussed below.

      C.    *The Medical Treatment Records*

As the ALJ noted, there are very few medical treatment notes in this record. Other than the notes from Joseph C.'s hospitalization for seizures, and his hospitalization for colitis, there are only six pages of notes from his primary care provider, Einstein Community Health Associates, and four pages of treatment notes from a dermatologist for eczema. Record at 819-824, 849-852. There are no chiropractic notes in the record.

The hospital treatment notes reflect that Joseph C. came to Torresdale Hospital on May 22, 2021, after experiencing a seizure at home, and had another witnessed seizure in the emergency room. Record at 640, 643. He was diagnosed with "alcohol withdrawal seizures." *Id*. Joseph C. acknowledged at his hearing that his seizures were alcohol related. Record at 98. He also testified that he was attending AA meetings at the time of the hearing, was drinking much less, and – as noted above – had not had a seizure recently.[1] *Id*.

Colitis was diagnosed on October 11, 2021, which the ALJ noted. Record at 26, 717. On October 15, 2021, at a follow-up appointment with his primary care physician, Joseph C. reported that the abdominal pain was mostly gone but that he still had diarrhea. Record at 822. He was referred to a gastroenterologist, but there is no evidence that he saw one. *Id*. As noted above, at the time of the hearing, he treated his colitis only with Pepto Bismol. Record at 101.

As to Joseph C.'s neck pain, "cervicalgia" was listed as a diagnosis in a note from July 13, 2021, prepared by his primary care provider. Record at 821. "Cervicalgia," however, is

---

[1] Emergency Room notes contain this: "Nursing staff received a phone call from patient's father, who states that he has heavy alcohol intake, despite patient adamantly denying it multiple times." Record at 642. Joseph C. admitted at his hearing that he was "in denial" at that time. Record at 98.

simply the medical term for neck pain.  Http://my.clevelandclinic.org.  As the ALJ pointed out, there is no evidence that Joseph C. ever underwent the neck x-ray or EMG recommended at that appointment.  Record at 821.

Unless an impairment is fatal, it can be the basis for a finding of disability only if it has lasted, or is expected to last, for twelve months.  20 C.F.R. §404.1509, §404.1520(a)(4)(ii).  Based on the evidence summarized above, therefore, the ALJ was entitled to reach the following conclusion:

> [Joseph C.]'s physical conditions include impairments which may have caused more than minimal limitation in the short-term, but responded well to treatment with improved symptomatology, and therefore failed to meet the durational requirement of causing more than minimal limitations for at least 12 months to be considered severe; [and] chronic impairments, for which the claimant has received only routine, conservative care, and the findings and/or symptoms do not indicate more than minimal limitation.

Record at 27.

V.    *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

/s/ Scott W. Reid
_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE